*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY CLEMENTS,

      Plaintiff-Appellant,

v

UNIVERSITY OF MICHIGAN REGENTS,

      Defendant-Appellee.

UNPUBLISHED
February 21, 2019

No. 341114
Court of Claims
LC No. 16-000272-MK

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff, Amy Clements, appeals by right an order granting summary disposition in favor defendant, University of Michigan Regents, under MCR 2.116(C)(10). Plaintiff had sought long-term disability (LTD) benefits, but the University's LTD plan administrator denied the request and that decision was upheld by an independent appeal panel. The decision prompted plaintiff to file suit in the Court of Claims, which summarily dismissed her complaint, determining as a matter of law that the denial of plaintiff's request for LTD benefits was not arbitrary and capricious. We affirm.

## I. FACTS

Plaintiff fell from a 20-foot balcony in December 2012 and sustained extensive physical injuries. She was in a coma for over two weeks. Plaintiff complained of ongoing back, hip, and "SI" joint[1] pain. After her fall, plaintiff obtained a Master of Science degree from Wayne State University. In September 2013, Ned L. Kirsch, Ph.D., a psychologist, completed an initial neuropsychological examination on plaintiff. He found "no indications of any specific area of cognitive decline, including no impairments of attention and concentration, processing speed, verbal reasoning, perceptual reasoning, verbal memory, perceptual memory, or executive reasoning, including no impairments of conceptual shifting." Dr. Kirsch also determined that

---

[1] This is a reference to the "sacroiliac" joint.

plaintiff had "intact functioning consistent with baseline [normal] status," that "[t]here were no indications of clinically significant psychological difficulties interfering with daily function," and that there was "no cognitive reason for work leave." He recommended that plaintiff return to work on a graduated schedule. Plaintiff attempted to return to work as a registered nurse at the University of Michigan hospital twice between November 2013 and August 2014, but she found work difficult and exhausting. In January 2014, plaintiff passed the board examination to become a nurse practitioner. In early 2014, she reduced her schedule as a nurse to three eight-hour shifts per week, but found that even with the lighter schedule, she was still exhausted. Plaintiff did not return to work after August 2014.

In October 2014, plaintiff began treatment with a psychiatric nurse practitioner who described plaintiff as anxious, irritable, tearful, and quick to sob. The nurse practitioner noted that plaintiff had difficulty accomplishing basic tasks, felt overwhelmed, and had issues planning her weekly schedule. In the course of plaintiff's treatment with the psychiatric nurse practitioner, she was prescribed various medications. In November 2014, plaintiff underwent additional neurological testing with Dr. Kirsch. He determined that plaintiff exhibited "superior" intellectual functioning, unimpaired attention and concentration and had no problems with sustaining attention. Dr. Kirsch further opined that plaintiff demonstrated unimpaired motor skills, verbal reasoning, perceptual reasoning, verbal memory, perceptual memory, and unimpaired executive functioning. The evaluation resulted in a finding that plaintiff was not disabled for purposes of her employment.

Between March 2015 and May 2016, plaintiff underwent treatments and evaluations by numerous healthcare professionals. During this period, Laura Feldmesser, Ph.D., did a biopsychosocial assessment and noted that plaintiff had trouble sleeping, woke up from nightmares, had difficulty calming herself when upset, and had problems with her memory, focusing, and sequencing. Wendy Corriveau, N.P., completed a Healthcare Provider Statement for defendant, indicating that plaintiff was unable to work.

After examining plaintiff and completing a medical statement in November 2015, plaintiff's primary care physician diagnosed chronic traumatic brain injury, severe chronic post-traumatic stress disorder (PTSD), major depression, severe anxiety, headaches, gastroparesis, right optic nerve compression, chronic pain, and chronic fatigue. He opined that plaintiff was disabled and that her impairment had lasted for or would last for more than 12 months. James Fuller, M.A., C.R.C., a vocational rehabilitation counselor, issued a report on April 28, 2016, following an interview with plaintiff and review of her medical restrictions. He opined that she was unemployable.

Defendant requested that plaintiff complete an independent medical examination (IME) with Craig Lemmen, M.D. In June 2015, Dr. Lemmen reviewed plaintiff's medical records, her job description at the University, her prior neuropsychological evaluations, and records of her psychiatric treatment. He also met with plaintiff for several hours. Dr. Lemmen indicated that before writing his IME report, he took an extensive medical history from plaintiff and had plaintiff complete the Minnesota Multiphasic Personality Inventory. He did not address plaintiff's physical disability, but stated that from a cognitive perspective, "she appeared to be intact." Dr. Lemmen opined that there was no evidence of plaintiff's self-described depression and anxiety disorders. He found a "marked" discrepancy between plaintiff's reported symptoms

and the results of the objective tests given her. Dr. Lemmen noted that, since her fall, plaintiff had been able to "find and keep a mate, pass master level courses, pass her [nurse practitioner] [b]oard exams, and work full time for five months . . . ." Dr. Lemmen based his opinion on "the absence of findings that she has credible symptoms and also on objective findings that she was, for example, able to sustain intact concentration during the two hour evaluation and then while completing psychological testing." When prompted as to whether he found plaintiff to be "totally disabled," Dr. Lemmen stated, "I do not find her disabled from a psychiatric perspective, as I cannot even verify a diagnosis." He further opined, "I see no psychiatric evidence that she is unable to meet the demands of her current position, and do not see any justification for [work] accommodations." Upon receiving additional information from plaintiff after he wrote his original IME report, Dr. Lemmen drafted an addendum to the report, concluding again that plaintiff was not disabled from a psychiatric standpoint.

Plaintiff applied for LTD benefits on August 19, 2015, claiming total disability due to "severe chronic depression and anxiety, PTSD, chronic pain and chronic fatigue." Plaintiff stated in her application that she attended physical therapy sessions as a part of her treatment regimen. Plaintiff attached a Health Care Provider Statement from her psychologist, Dr. Feldmesser, who opined that plaintiff suffered from PTSD, generalized anxiety disorder, and major depressive disorder. Dr. Feldmesser also indicated that plaintiff had impaired memory, was unable to concentrate, suffered from fatigue, and had problems interacting with others.

The University's LTD benefit administrator denied plaintiff's claim because "[she] [did] not meet the definition of total and permanent disability under the University of Michigan's Expanded Long-Term Disability Plan." The plan provided that one satisfies the definition under the following circumstances:

> The university's [claims administrator] has determined, at their sole discretion that you are completely unable, except during periods of rehabilitative employment, by reason of any medically determinable physical or mental impairment, to engage in any occupation or employment for wages or profit for which you are reasonabl[y] suited by education, training, or experience. The impairment must be expected to result in death or to have lasted, or be expected to last, for a continuous period of not less than twelve (12) months from your last day of work.

Plaintiff appealed. The appeal panel, which was comprised of "individuals independent of the University of Michigan LTD unit" and included "an experienced Claims Specialist, a Claims Manager and a Registered Nurse," reviewed "all original claim information as well as any additional documentation supplied." The appeal panel determined:

> There is no evidence to support that the above conditions, either individually or in totality, disable you from any occupation for a continuous period of not less than [12] months from 08/04/2014. Being out of the workplace for more than [12] months does not automatically qualify you for benefits under the LTD plan.

Therefore, your claim has been denied as it does not meet the definition of total and permanent disability.

Plaintiff then instituted this action in the Court of Claims, which rejected plaintiff's contention that the administrator's denial letter lacked any rationale for its decision to deny LTD benefits. The Court of Claims determined that although the claims administrator's rationale was brief, it was satisfactory and not arbitrary or capricious.

## II. ANALYSIS

Plaintiff argues that the Court of Claims erred in granting defendant's motion for summary disposition. This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). With respect to the well-established principles governing the analysis of a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), observed:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

In analyzing a factually analogous claim in *Guiles v Univ of Mich Bd of Regents*, 193 Mich App 39, 43; 483 NW2d 637 (1992), this Court held that in accordance with *Firestone Tire & Rubber Co v Bruch*, 489 US 101; 109 S Ct 948; 103 L Ed 2d 80 (1989), an independent LTD plan administrator's decision about eligibility is reviewed under an arbitrary and capricious standard, but only if the benefit plan gives the administrator discretionary authority to determine eligibility and to construe the terms of the plan. See also *Shaw v AT&T Umbrella Benefit Plan No. 1*, 795 F3d 538, 546 (CA 6, 2015) ("When the plan grants the plan administrator such discretion, then a court must review the administrator's denial of benefits under the arbitrary-and-capricious standard."). In this case, the University's LTD claims administrator makes LTD disability determinations at the administrator's sole discretion based on medical information, which must include objective clinical findings. Because the claims administrator for the University was granted "sole" discretion to determine plaintiff's eligibility for LTD benefits, the parties and the

Court of Claims were correct to analyze the administrator's decision under an arbitrary and capricious standard.

"A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Westcott v Civil Serv Comm*, 298 Mich App 158, 162; 825 NW2d 674 (2012); see also *Bundo v City of Walled Lake*, 395 Mich 679, 703 n 17; 238 NW2d 154 (1976). The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. *McDonald v Western-Southern Life Ins Co*, 347 F3d 161, 169 (CA 6, 2003). Despite this most deferential standard of review, it does not equate to no review; "deference need not be abject." *Hess v Hartford Life & Accident Ins Co*, 274 F3d 456, 461 (CA 7, 2001) (quotation marks omitted). Still, "when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to . . . benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald*, 347 F3d at 169.

Plaintiff argues that the administrator's decision to deny her LTD benefits was arbitrary and capricious because: (1) the administrator did not provide a rationale to support its decision; (2) the mere statement that evidence was reviewed was an insufficient explanation; (3) the administrator improperly relied on the opinion of Dr. Lemmen, a psychiatrist, to determine that she was not *physically* disabled due to chronic back pain; and (4) the conclusions about plaintiff's disabilities in Dr. Lemmen's IME report conflicted with the medical records produced by plaintiff.

The administrator, after noting plaintiff's alleged impairments and reviewing all the medical documentation that plaintiff had submitted from 11 medical professionals, found that plaintiff did not meet the definition of a total and permanent disability under the terms of the University's LTD plan. The appeal panel could not find any evidence to support an alternative conclusion. As the Court of Claims recognized, the justifications given by the administrator were concise and arguably circular; however, an LTD plan administrator's decision does not require the depth and reasoning present in a judicial opinion. The law requires an articulation of the decision by the plan administrator or trustee. *Militello v Central States, SE & SW Areas Pension Fund*, 360 F3d 681, 689 (CA 7, 2004) ("Although the [denial] letter is sparse, the Trustees were required to give only specific reasons, not the reasoning behind the reasons.") (quotation marks omitted); *Gallo v Amoco Corp*, 102 F3d 918, 923 (CA 7, 1996) ("All [the plan administrator] has to give the [claimant] is the reason for the denial of benefits; he does not have to explain to him why it is a good reason. To require that would turn plan administrators not just into arbitrators, for arbitrators are not usually required to justify their decisions, but into judges, who are."). Here, the plan administrator determined that upon review of all the medical documentation provided that plaintiff's purported impairments did not qualify as a total and permanent disability under the University's LTD plan. This is a clear, albeit short, articulation of the decision. Plaintiff's contention that this explanation was insufficient is not enough to render it void because the administrator articulated its decision by referencing the process it completed before denying plaintiff benefits and explaining why it denied plaintiff benefits. The law requires nothing more.

Plaintiff contends that the decision to elevate Dr. Lemmen's opinion about her claimed disability over those provided by other healthcare professionals was arbitrary and capricious. We disagree: a plan administrator is free to rely on one doctor's opinion over another's. *Hayden v Martin Marietta Materials, Inc, Flexible Benefits Program*, 763 F3d 598, 607 (CA 6, 2014); *McDonald*, 347 F3d at 169. There was evidence presented regarding plaintiff's alleged disabilities, most notably the assessments of her physician, James Fuller, Wendy Corriveau, and Dr. Feldmesser, indicating that plaintiff suffered from psychological and physical ailments that prevented her from working. The claims administrator, however, was free to rely on Dr. Lemmen's opinion that plaintiff was not disabled in rendering its decision on plaintiff's LTD claim.

With respect to the argument that the administrator relied on the opinion of a psychiatrist to conclude that plaintiff was not physically disabled, we note that Dr. Lemmen did not explicitly state that plaintiff was not physically disabled although he did observe that she was not totally disabled. This suggested a determination that plaintiff was not totally physically disabled. Moreover, in arguing that Dr. Lemmen was not qualified to give an opinion on her physical disability, plaintiff disregards an earlier stipulation in which she agreed that Dr. Lemmen was qualified to perform the IME and that he conducted a proper and appropriate IME.

Additionally, although it is apparent from the denial letter that the plan administrator relied on Dr. Lemmen's opinion that plaintiff was not disabled, it cannot be said that the administrator solely relied on the doctor's IME report in making the decision about plaintiff's physical disability. Both the initial and the appeal denial letters stated that the administrator reviewed medical records plaintiff provided to it, which included documentation from many medical professionals other than Dr. Lemmen. Of these medical professionals, at least two, Dr. Kwok and James Fuller, discussed opinions about and care for plaintiff's physical pain. Documents produced from plaintiff's sessions with each healthcare professional provided varying insights about and recounted completed treatments for plaintiff's physical pain. Implicit in the determination that plaintiff's physical ailments did not qualify as a total and permanent disability under the terms of the University's extended LTD plan was the administrator's utilization of medical records other than Dr. Lemmen's report about plaintiff's purported physical disability. Because the decision was based on a review of extensive medical records, including those covering the topic of physical ailments, and it was within the administrator's "sole discretion" to evaluate these records, it cannot be said that the administrator solely relied on Dr. Lemmen's opinion to decide that plaintiff was not physically disabled.

Finally, plaintiff argues that because the LTD plan administrator credited Dr. Lemmen's report over reports by other healthcare professionals, *defendant* acted arbitrarily and capriciously in adopting the decision. But the terms of defendant's extended LTD plan clearly state that the decision to grant or deny LTD benefits to a claimant rests with the plan administrator. Defendant gave the administrator "sole discretion" to grant or deny benefits to employees. Defendant cannot be said to have acted arbitrarily and capriciously in following the procedure set forth by the plan.

We affirm.  Having fully prevailed on appeal, defendant may tax costs under MCR 7.219.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ Amy Ronayne Krause